Case 4:24-cv-01656   Document 22   Filed on 11/26/24 in TXSD   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
November 26, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IVORY R. MITCHELL, TDCJ # 00363139, § § § § Plaintiff, § § VS. § CIVIL ACTION NO. 4:24-1656 § CHIEF HOME, § § § Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ivory R. Mitchell, an inmate in the Texas Department of Criminal Justice–Correctional Institutions Division (TDCJ), proceeds *pro se* and *in forma pauperis* in this civil rights action. Mitchell has filed a complaint (Dkt. 1) and, as ordered by the Court, a more definite statement of his claims (Dkt. 17). Because this case is governed by the Prison Litigation Reform Act (PLRA), the Court is required to scrutinize the pleadings and dismiss the complaint in whole or in part if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b). Having reviewed the pleadings as required, the Court will **dismiss** Mitchell's claims for the reasons explained below.

## I.   BACKGROUND

Mitchell was released on parole in August 2020, but returned to TDCJ in November 2023 after his parole was revoked (Dkt. 17, at 2). He claims that, from the time of his parole revocation, TDCJ officials have miscalculated the remaining time on his sentence.

His TDCJ record reflects two offenses: (1) a 1983 conviction for aggravated robbery with a sentence of 45 years; and (2) a 2023 conviction for possession of a controlled substance with a sentence of 180 days. *See* Inmate Information Search, available at https://inmate.tdcj.texas.gov/InmateSearch (last visited Nov. 15, 2024). The record also reflects that his next parole review is scheduled for March 2026. He is confined at the Bell Unit in Cleveland, Texas.

Mitchell claims that he should not have been returned to TDCJ but rather should have been punished, as a hearing officer recommended, by placement in an intermediate sanction facility (ISF) (Dkt. 17, at 4). He also claims that he is "not to receive punishment and to be prosecuted unless it [pertains] to the 65th legislat[ure] and [H]ouse [B]ill 2455," but that TDCJ and the Board of Pardons and Paroles are using other laws to lengthen his sentence (*id*.). He states that TDCJ now is calculating his time under laws passed during the 72nd and 73rd legislatures, in violation of the Ex Post Facto Clause of the Constitution (*id*. at 4-5; *see id*., at 5 ("I should be eligible [for parole review] each year under the legislation I was convicted under"). He also states that additional punishments he has received, such as GPS monitoring and parole fees, are invalid because such penalties did not exist when he was convicted in 1983 (*id*. at 6).

Mitchell brings his time-calculation claims against Chief Home at TDCJ's Bell Unit, alleging that she failed to address the alleged mistake in the length of his incarceration and the timing and frequency of his parole reviews (*id*. at 7). He states that, when he complained to Chief Home, she responded that "it was not her position to calculate [Mitchell's] time" (*id*. at 8).

Mitchell also brings retaliation claims against three defendants: Travis Turner; Kelly Enloe; and Joni White. He identifies each of these defendants as working in TDCJ's classifications department. He alleges that Turner retaliated against him in June 2016 when, along with Enloe and White, he "made it look like [Mitchell] was having an affair with [an officer, Lisa Winston], when [he] was not" (*id*. at 10-11). He claims that Turner's retaliation caused "parole denials," "unfair monitoring of [his] good time," and miscalculation of the remaining time on his sentence (*id*. at 12). When asked by the Court how he knows that Turner caused him harm, he responded that he "feel[s] it was Travis Turner, Kelly Enloe, and Joni White" because, before incident with Winston, Mitchell had no issues with the calculation of his time credits and was a "well respected inmate" (*id*.). When asked to provide all facts supporting his belief that Turner was motivated by retaliation, Mitchell stated only that, prior to the incident, he had no issues in TDCJ (*id*.).

Mitchell alleges that Enloe, a classifications board member, retaliated against him in 2016 when she described him in a court filing as "big and bad" and refused to transfer him to protective custody, after which Mitchell was assaulted by other inmates (*id*. at 14). When asked how he knows that Enloe was motivated by retaliation, Mitchell responded, "I don't know exactly why [Enloe] done the things she done" and that he "can only assume" she acted to protect TDCJ from monetary damages (*id*. at 17).

Mitchell alleges that White, also a classification board member, retaliated against him by failing to investigate his complaint in 2024 regarding the calculation of his sentence (*id*. at 20). When asked how he knows that White was motivated by retaliation, Mitchell stated that he does not know that White personally took the action or why she had done so,

but that "she should be held accountable" because she's a classification board member and ignored his complaints (*id*. at 21).

Mitchell states that he filed a grievance regarding the calculation of his sentence, which officials denied on the grounds that the issue was not grievable (*id*. at 22-23). He did not provide any information regarding grievances relevant to his retaliation claims.

As relief for his claims, Mitchell requests release from confinement, recalculation of his sentence, an order directing TDCJ to conduct his parole review more frequently, and a refund of his fees for this civil action (Dkt. 1, at 4; Dkt. 17, at 6).

Since filing his more definite statement, Mitchell has submitted four letters in which he complains of harassment and retaliation. He requests that the Court investigate or order federal protection.[1]

## II.   **STANDARD OF REVIEW**

Because the plaintiff is a prisoner proceeding *in forma pauperis*, the Court is required by the PLRA to screen the case and dismiss the complaint at any time if it determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such

---

[1] *See* Dkt. 18 (letter filed Oct. 7, 2024, states that Chief Home assigned him a cellmate who is not disabled and 30 years younger than Mitchell and requests "federal protection"); Dkt. 19 (letter filed Oct. 10, 2024, states that, because of his complaint regarding his cellmate, he was placed on a disciplinary pod "by classifications" in order to retaliate against him for filing housing complaints); Dkt. 20 (letter filed Oct. 21, 2024, states that he was "shook down" by an officer named Montoya, who is not a defendant in this suit, who took Mitchell's cane in an effort to provoke him into disciplinary problems); Dkt. 21 (letter filed Oct. 23, 2024, states that he is housed with inmates who are 25-30 years old and "smoke dope all day long" and that Chief Home is trying to get him assaulted; letter requests a court investigation into his safety).

relief. 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2)(B). A district court may dismiss a claim as frivolous if it lacks any arguable basis in law or fact. *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009). A claim lacks an arguable basis in law "if it is based on an indisputably meritless legal theory." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (cleaned up). It lacks an arguable basis in fact "if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Id.* (cleaned up).

A dismissal under § 1915A(b) or § 1915(e)(2)(B) for failure to state a claim is governed by the same standard as a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Newsome v. EEOC,* 301 F.3d 227, 231 (5th Cir. 2002). Under this standard, the Court "construes the complaint liberally in favor of the plaintiff," "takes all facts pleaded in the complaint as true," and considers whether "with every doubt resolved on [the plaintiff's] behalf, the complaint states any valid claim for relief." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (cleaned up). A court may dismiss a case *sua sponte* and without notice to the plaintiff if the plaintiff has pleaded his best case or if the dismissal is without prejudice. *Brown v. Taylor*, 829 F.3d 365, 370 (5th Cir. 2016); *see Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (holding that a court may *sua sponte* dismiss for failure to state a claim "as long as the procedure employed is fair") (cleaned up); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986) (holding that where the pleadings, viewed under the individual circumstances of the case, "demonstrate that the plaintiff has pleaded his best case," dismissal on the pleadings is appropriate if the pleadings do not adequately state a cause of action).

In reviewing the pleadings, the Court is mindful of the fact that the plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Additionally, regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *Geiger v. Jowers,* 404 F.3d 371, 373 (5th Cir. 2005).

### III.     DISCUSSION

Mitchell brings his civil-rights claims under 42 U.S.C. §1983, which provides a vehicle for a claim against a person "acting under color of state law," such as a prison official, for a constitutional violation. *See Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 180 (5th Cir. 2016). Claims under § 1983 are subject to a two-year statute of limitations. *See Winfrey v. Rogers*, 901 F.3d 483, 492 (5th Cir. 2018); TEX. CIV. PRAC. & REM. CODE § 16.003(a). The limitations period "begins to run once the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Matter of Hoffman*, 955 F.3d 440, 444 (5th Cir. 2020) (cleaned up).

### A.     Claims against Chief Home

#### 1. Venue

As an initial matter, this Court is not a proper venue for Mitchell's claims against Chief Home.  Federal statute provides that a civil action may be brought in (1) "a judicial district in which any defendant resides," (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred,"  or (3) "if there is no district where the action may otherwise be brought . . . , any judicial district in which any defendant is subject to the court's personal jurisdiction." 28 U.S.C. § 1391(b).  Chief Home is in Cleveland, Texas, at the Bell Unit, and the relevant events took place there.  Cleveland is in Liberty County, which is in the Eastern District of Texas, Beaumont Division.  28 U.S.C. § 124(c)(2).  Mitchell does not plead any facts against Chief Home with a connection to the Southern District of Texas.

When a case lays venue in the wrong district or division, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district of division in which it could have been brought." 28 U.S.C. § 1406(a).  A district court has "broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1999).  In this case, the Court determines that a transfer would not serve the interests of justice because, as explained below, Mitchell's claims against Chief Home must be dismissed.

#### 2. Claims Regarding Sentence

Mitchell alleges TDCJ officials miscalculated the length of his sentence in 2023, when he was readmitted to TDCJ after his parole was revoked.  He sues Chief Home

because she allegedly failed to address or correct the error. He argues that he should be sentenced according to laws passed during the 65th legislature, but that TDCJ is calculating his sentence under laws passed during the 72nd and 73rd legislatures, in violation of the Ex Post Facto Clause. He seeks release from confinement and more frequent parole reviews.

Mitchell's claim against Chief Home fails because the relief he seeks is not available in a civil-rights action under § 1983. Although the line between civil-rights claims and habeas claims is often "blurry," "challenges to the fact or duration of confinement are properly brought under habeas, while challenges to the conditions of confinement are properly brought under § 1983." *Poree v. Collins*, 866 F.3d 235, 243 (5th Cir. 2017) (footnotes omitted) (citing, *inter alia*, *Preiser v. Rodriguez*, 411 U.S. 475 (1973)); s*ee Cook v. Texas Dep't of Criminal Justice Transitional Planning Dep't*, 37 F.3d 166, 168 (5th Cir. 1994). Because Mitchell seeks a shorter duration of his confinement, his claims are properly categorized as habeas claims.

Mitchell may, if appropriate, file a habeas corpus action regarding his post-revocation sentence in the proper venue. Before filing a federal habeas action, the petitioner is required to exhaust state remedies by seeking state habeas relief in the court where he was convicted. *See, e.g., Ex parte Evans*, 964 S.W.2d 643, 647 (Tex. Crim. App. 1998). The Court notes that eligibility for street-time credit is determined by the law in effect at the time of a prisoner's parole revocation. *See Ex parte Hernandez*, 275 S.W.3d 895, 897 (Tex. Crim. App. 2009). The law in 2023 provided that, if parole is revoked for a person convicted of aggravated robbery, the person "may be required to serve the

remaining portion of the sentence on which the person was released . . w*ithout credit* for the time from the date of the person's release to the date of revocation." TEX. GOV'T CODE § 508.283(b) (emphasis added); *see* TEX. GOV'T CODE § 508.149(12) (aggravated robbery).

### B.      Retaliation Claims

On this record, the Court cannot determine whether Mitchell exhausted his administrative remedies for his retaliation claims. In any event, his claims must be dismissed for the reasons that follow.

To state a valid claim for retaliation, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *Baughman v. Hickman*, 935 F.3d 302, 312 (5th Cir. 2019). If an inmate is unable to point to a specific constitutional right that has been violated, the claim will fail. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). To show intent, the inmate must allege more than his personal belief that he is the victim of retaliation. *See Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). The inmate must produce direct evidence of motivation, or allege a chronology of events from which retaliation may plausibly be inferred. *Woods*, 60 F.3d at 1166. As for causation, a successful claim of retaliation requires a showing that "but for" some retaliatory motive, the complained-of adverse action would not have occurred. *Nieves v. Bartlett*, 587 U.S. 391, 398-99 (2019); *Woods*, 60 F.3d at 1166. A supervisory official may be held liable under § 1983 "only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally

result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (cleaned up).

Mitchell alleges that Turner and Enloe retaliated against him in 2016 (Dkt. 17, at 11, 16). He pleads no facts suggesting that he was unaware of the alleged injury at the time. Because he filed this suit in 2024, these claims are barred by the two-year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE § 16.003(a); *Winfrey*, 901 F.3d at 492. Additionally, Mitchell does not plead facts that could show that either Turner or Enloe acted with a retaliatory motive that was a "but for" cause of the alleged adverse action.[2] Therefore, he fails to state a retaliation claim against either defendant. *See Nieves*, 587 U.S. at 398-99 ("but for" cause is required); *Johnson*, 110 F.3d at 310 (a plaintiff's personal belief that a defendant retaliated against him is insufficient).

Mitchell alleges that White retaliated against him by failing to investigate his complaint regarding his sentence calculation, stating that he does not know exactly what action or inaction is attributable to White or why she acted as she did (Dkt. 17, at 21). Because he does not plead facts that could show that White's retaliatory motive was a "but for" cause of the alleged adverse action, he fails to state a retaliation claim against her. *See Nieves*, 587 U.S. at 398-99; *Johnson*, 110 F.3d at 310.

Finally, in his four recent letters to the Court, Mitchell complains that Chief Home, a non-defendant named Montoya, and "classifications" personnel generally are harassing

---

[2] *See* Dkt. 17, at 12 (stating that he feels that Turner, Enloe, and White retaliated against him because he had no issues with TDCJ before the Winston incident); *id*. at 17 (stating that he does not "know exactly why" Enloe acted against him).

10 / 12

him or retaliating against him based on his housing assignments (Dkt. 18; Dkt. 19; Dkt. 20; Dkt. 21). He appears to state that at least some of the alleged retaliation is due to his complaints regarding his housing assignments at the Bell Unit (*see*, *e.g.*, Dkt. 19, at 1). None of his letters adequately allege that a defendant in this suit intended to retaliate against Mitchell for exercising a specific constitutional right, nor that the defendant's retaliatory motive was the "but for" cause of the adverse action against him. *See Nieves*, 587 U.S. at 398-99; *Baughman*, 935 F.3d at 312. Therefore, to the extent the letters could be construed as a request for leave to amend his pleadings under Federal Rule of Civil Procedure 15(a), or supplement his pleadings under Rule 15(d), the Court denies the request on the grounds that the amendment or supplement would be futile.[3] Moreover, because the officials involved apparently are at the Bell Unit and the relevant events occurred there, the proper venue for Mitchell's claims would be in the Eastern District of Texas, Beaumont Division, and not in this Court. Mitchell may, if appropriate, exhaust his administrative remedies and file a new suit in the proper court.

Mitchell's retaliation claims will be dismissed for failure to state a claim upon which relief can be granted.

---

[3] *See* FED. R. CIV. P. 15(a), (d); *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) ("futility" in the context of a Rule 15 motion to amend means that the proposed amended complaint would fail to state a claim upon which relief could be granted). Additionally, because the proposed supplements mostly involve persons who are not defendants in this case and pertain to completely separate incidents, the Court in its discretion denies leave to supplement. *See Burns v. Exxon*, 158 F.3d 336, 343 (5th Cir. 1998) (whereas Rule 15(a) provides that leave to amend should be "freely given," the text of Rule 15(d) contains no such provision).

## IV. CONCLUSION

For the reasons explained above the Court now **ORDERS** that Mitchell's claims are **DISMISSED with prejudice** under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief can be granted.

All pending motions, if any, are **DENIED as moot**.

**The Clerk will provide a copy of this order to the parties and to (1) the TDCJ Office of General Counsel at the email address on file with the court; (2) the Inmate Trust Fund, P.O. Box 629, Huntsville, Texas 77342-0629, by email at ctfcourt.collections@tdcj.texas.gov; and (3) the Manager of the Three-Strikes List for the Southern District of Texas at Three_Strikes@txs.uscourts.gov**.

SIGNED at Houston, Texas, on ___November 26___, 2024.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE